Plaintiff Robert A. Adams appeals from a judgment entered by the trial court on a jury verdict in his favor, contending that the trial court erred by reducing the jury verdict by the amount of a pro tanto settlement between Adams and another defendant. Defendant Travelers Insurance company cross-appeals, contending that the trial court erred by refusing to grant its motion for directed verdict and, later, its motion for judgment notwithstanding the verdict (JNOV). We agree that the trial court erred in refusing to direct a verdict for Travelers; therefore, we reverse and remand with instructions for the trial court to enter judgment for Travelers.
Travelers is the insurance carrier for Dean's Sausage Company in Gadsden, where Adams was employed as a "washer." His duties consisted of rinsing off slaughtered hogs after the carcasses were inspected by the United States Department of Agriculture inspector and prior to the deboning process. The slaughtered hogs are hoisted onto an overhead roller system to be cleaned and inspected. After washing the hogs, Adams was to push them to the deboning room.
On July 23, 1982, Adams was pushing a carcass along the rail when the roller snagged. Adams shoved the carcass as hard as he could with his hands, and the carcass swung back, knocking his feet out from under him so as to cause him to fall and injure his neck and back.
Prior to the time of Adams's injury, Stephen Bentley, who worked for Travelers, had twice inspected the Dean's plant. On March 29, 1982, Bentley toured the facility to determine if Travelers should continue to insure Dean's. On May 19, 1982, Bentley again visited the plant to conduct a boiler rating survey. The plant was not in operation at the time of either of these visits.
On July 22, 1983, Adams filed suit against Travelers, Dean's Gary Shirley, a co-employee, and several fictitious defendants, claiming worker's compensation benefits, and claiming damages for injuries due to negligent maintenance of the roller system and due to Travelers' alleged negligent inspection and failure to warn. A motion by Dean's to sever the worker's compensation claim was granted on September 9, 1983. On November 8, 1983, Adams amended his complaint to add Bentley and R.C. Whitt, a co-employee of Adams, as defendants.
The trial court granted Bentley's motion to strike that portion of the amendment adding him as a defendant. Trial commenced on June 17, 1985, and the trial court was informed that Adams had reached a pro tanto settlement with Shirley and Whitt for $22,500. Therefore, the case was presented to the jury against Travelers *Page 403 
alone on the claim of negligent inspection and failure to warn.
Travelers filed motions for directed verdict at the close of plaintiff's evidence and at the close of all the evidence; these were denied, and the jury returned a verdict in favor of Adams for $40,500. The trial judge reduced this award by the amount of the pro tanto settlement.
We begin by noting that there is a presumption in favor of a verdict for a plaintiff and in favor of the trial judge's refusal to grant a directed verdict. Ridout's Brown Service,Inc. v. Holloway, 397 So.2d 125 (Ala. 1981). In a directed verdict case, we must view the evidence in a light most favorable to the nonmoving party and if, by any interpretation, the evidence can support any inference supportive of a conclusion in favor of the nonmoving party, directed verdict is inappropriate. Wadsworth v. Yancey Brothers Co., 423 So.2d 1343
(Ala. 1982); Herston v. Whitesell, 374 So.2d 267 (Ala. 1979). If there is even a scintilla of evidence in favor of the nonmoving party, directed verdict is improper. Pate v. SunsetFuneral Home, 465 So.2d 347 (Ala. 1984); Battles v. San AnnService, Inc., 441 So.2d 925 (Ala.Civ.App. 1983). Despite this heavy burden on the moving party, we must reverse the denial of the directed verdict.
In Barnes v. Liberty Mutual Insurance Co., 472 So.2d 1041
(Ala. 1985), plaintiff Mildred Barnes appealed from a summary judgment granted in favor of Liberty Mutual Insurance Company on the issue of negligent inspection. This Court stated:
 "In our determination of the propriety of summary judgment, we are limited in our review to the same factors considered by the trial court when it initially ruled on the motion. Ex parte Bagby Elevator Elec. Co., 383 So.2d 173 (Ala. 1980). The question before us, therefore, is whether there was a scintilla of evidence before the trial court to prove negligent inspection on the part of Liberty Mutual.
 "Common law liability to third parties can arise from the negligent performance of even a voluntary undertaking. Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971). Under current Alabama law, a worker's compensation carrier may be liable when it voluntarily undertakes to inspect an employer's premises for safety. Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334, 338
(Ala. 1980). However, in a suit of this nature, a plaintiff bears the burden of proving (1) that the defendant had a duty, or assumed a duty by voluntarily undertaking the inspection; (2) the scope of that duty; (3) whether the duty was breached; (4) whether there was damage or injury; and (5) whether the injury was proximately caused by that breach. Fireman's Fund, 394 So.2d at 349 (Jones, J., concurring); see also, United States Fidelity Guaranty Co. v. Jones, 356 So.2d 596 (Ala. 1977).
 "In the instant case, there was evidence to indicate that Liberty Mutual did conduct some voluntary safety inspections at DAB Industries. However, there was no evidence to indicate that Liberty Mutual ever inspected the machine or the area in which Barnes was working. There was also not even a scintilla of evidence presented to indicate that any safety inspection was negligently performed or that any negligence on the part of Liberty Mutual proximately caused Barnes's injuries.
 "We, therefore, conclude that Barnes failed to present even a scintilla of evidence that she was injured as a result of Liberty Mutual's negligent inspection. Accordingly, we agree with the trial court that there exists no genuine issue of material fact, and hereby affirm."
Similarly, in the present case there was evidence which indicated that Travelers conducted two voluntary inspections of Dean's. Nevertheless, the evidence is undisputed that Travelers never inspected, nor even attempted to inspect, the plant while it was in operation. In his brief, Adams argues that "Bentley's failure to *Page 404 
observe the work hazards while the plant was in operation is by itself a negligent inspection." However, we are unable to distinguish the facts in this case from those in Barnes, and, thus, are of the opinion that Travelers did not undertake the duty to discover any defects in the hog cleaning and inspection machinery, and should have been granted a directed verdict or JNOV. Therefore, the judgment of the trial court is reversed and the case remanded with instructions to enter a judgment in favor of Travelers. Because we resolve this case in favor of Travelers, we need not address Adams's claim that the trial court's reduction of the verdict was improper.
REVERSED AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and ALMON, SHORES and BEATTY, JJ., concur.